IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

      v.                                                    24-CR-60-LJV-JJM

GREGORY TROTTER,

                 Defendant.
_____

### GOVERNMENT'S RESPONSE TO DEFENDANT'S OMNIBUS MOTION AND CROSS MOTION FOR DISCOVERY

The defendant has filed pretrial motions seeking various forms of relief.  The United States of America, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, and Douglas A. C. Penrose and Joseph M. Tripi, Assistant United States Attorneys, of counsel, hereby files the government's response to the defendant's pretrial motions.

### PRELIMINARY STATEMENT

On or about December 5, 2023, the defendant appeared before this Court for an initial appearance after being charged by way of complaint with violation of Title 18, United States Code, Section 1001(a)(2).

Nearly two months later, on or about January 24, 2024, defense counsel represented that he had been retained by the defendant.

On or about January 24, 2024 and on or about February 12, 2024, the government provided the defendant with voluntary discovery in connection with the criminal complaint.

On or about April 23, 2024, a grand jury empaneled in the Western District of New York returned a one-count indictment against the defendant, charging the defendant with violation of Title 18, United States Code, Section 1001(a)(2).

On July 16, 2024, the defendant filed pretrial motions and the following constitutes the government's response.

The government specifically reserves its right to file any necessary Memoranda of Law with respect to any factual or legal issues developed during the argument with respect to the instant motions and to respond to any motions or requests to which the defendant has requested leave to file or reserved.

## I.     The Court Should Deny the Defendant's Motion to Strike Surplusage from the Indictment.

The defendant asks this Court to strike paragraphs 2 through 8 from the indictment as surplusage.[1]  The Court should deny this motion as the defendant fails to articulate a sufficient basis to merit such relief.  A defendant's motion to strike surplusage from an indictment "will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (internal quotation marks and citations omitted).  "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *Id.*  "This standard is an exacting one and only rarely is alleged surplusage stricken from an indictment." *United States v. Nejad*, No. 18-cr-224, 2019 WL 6702361, at *18

---

[1] The defendant makes this motion pursuant to Federal Rule of Criminal Procedure 7(**e**), which relates to amending an information.  (Dkt. 24 at 4.)  The government presumes that the defendant intended to cite to Federal Rule of Criminal Procedure 7(**d**) and proceeds on that basis.

(S.D.N.Y. Dec. 6, 2019) (internal quotations and citations omitted).  The defendant's motion does not meet this standard.

Here, paragraphs 2 through 8 of the indictment are highly relevant to the crime charged.  The defendant, who at the relevant time was a detective with the Amherst Police Department ("APD"), is alleged to have made false statements to the FBI regarding his contacts with another individual, Peter Gerace, and his involvement in the investigation into the theft of Gerace's Rolex watch. (Dkt. 14 at 3.)  Paragraphs 2 through 8 explain these allegations, setting forth the contacts that the government will prove did occur between the defendant and Gerace (paragraphs 2, 4, 5, and 6), a synopsis of the investigation into the theft of Gerace's Rolex watch and the defendant's involvement in that investigation (paragraphs 3, 4, 5, and 6), and the events giving rise to the defendant's interview where he is alleged to have made the false statements (paragraphs 7 and 8).  "District courts within [the Second Circuit] have interpreted relevance to include language that explains the crimes charged." *United States v. Ferguson*, 478 F. Supp. 2d 220, 235 (D. Conn. 2007); *see also United States v. Hill*, 799 F. Supp. 86, 89 (D. Kan. 1992) ("[I]t is proper for the indictment to contain relevant background information").  On this basis, the challenged paragraphs are relevant and the defendant's motion therefore should be denied on that basis alone.

In addition to being relevant, the challenged paragraphs are also not inflammatory or prejudicial. "Whether language is inflammatory and prejudicial is considered in light of the accusations lodged against the moving defendant." *United States v. Urso*, 369 F. Supp. 2d 254, 270 (E.D.N.Y. 2005). Thus, what might be inflammatory and prejudicial in one case can be wholly appropriate in another.  *See id.* (noting that courts have consistently allowed references to organized crime connections in RICO cases); *see also United States v. Pirk*, 15-cr-142, 2018

WL 1027441, at *2 (W.D.N.Y. Feb. 21, 2018) (denying motion to strike surplusage regarding language in indictment providing history of motorcycle gang and descriptions of how it carried out various criminal activities in RICO conspiracy case).  Here, the challenged paragraphs do no more than concisely set forth what the government will prove regarding the defendant's contacts with Gerace and his involvement in the investigation of the theft of Gerace's watch.  This can hardly be characterized as inflammatory or prejudicial.

The defendant asks the Court to strike the entirety of the indictment, other than the first and final paragraphs, yet fails to state with any specificity which parts of the indictment are objectionable.  Instead of delineating what language the defendant believes is irrelevant, inflammatory, and prejudicial, he instead broadly states that the offending paragraphs "do not allege any improper or criminal conduct," imply an improper relationship between the defendant and Gerace, are not relevant to the charge in the indictment, and are "inflammatory and prejudicial." (Dkt. 24 at 4-5.)  The only support for this proposition that the defendant can marshal is that the defense has interviewed APD personnel, all of whom told the defense that the defendant was a "conscientious law enforcement officer." (Dkt. 24 at 4.)  While this might be admissible reputation evidence at trial, it has absolutely no bearing whatsoever on a motion to strike surplusage.

Accordingly, because the language in the challenged paragraphs is relevant to the charge in the indictment and because it is neither inflammatory nor prejudicial, the Court should deny the defendant's motion.[2]

---

[2] Even if the defendant were able to articulate a colorable claim that the challenged paragraphs were in some way irrelevant and prejudicial and inflammatory, the Court should still deny the motion at this juncture.  As this Court has previously noted, "an indictment is merely an allegation" and "there is nothing in the law that requires submission of the indictment to the jury . . . in its entirety, or in some redacted form." *United States v. Jabar*, No. 09-cr-170, 2011 WL 13364609, at *5 (W.D.N.Y. July 11, 2011) (internal quotations and citations omitted).  The defendant can therefore renew his motion if the government fails to introduce evidence regarding the alleged surplusage at trial.

## II.    The Defendant's Motion to Dismiss the Indictment for Outrageous Government Misconduct Should Be Denied.

The defendant's motion to dismiss the indictment for alleged outrageous government misconduct should be summarily denied, as it fails advance evidence of *any* government misconduct, let alone misconduct so egregious that it would justify dismissal of the pending indictment.  Government agents sought to speak with the defendant, who counsel for Peter Gerace had identified as a potential witness for Gerace in an upcoming trial.[3]  As defense counsel acknowledges, the defendant *voluntarily* chose to speak with the agents. (Dkt. 24 at 8-9.)  The defendant then chose to lie—repeatedly and pervasively—concerning his contacts with Gerace and his involvement in the investigation into the theft of Gerace's watch.  The defendant's false statements were not the result of any misconduct by the government; the only misconduct was by the defendant.

### A.  Legal Standard

To establish a due process violation on the basis of government misconduct, a defendant must show the government's conduct to be "so outrageous that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction." *United States v. Schmidt*, 105 F.3d 82, 91 (2d Cir. 1997).  Put differently, the conduct must "'shock the conscience' in the sense contemplated by [the Supreme Court in] *Rochin v. California*, 342 U.S. 165, 172 (1952) (forced stomach pumping)." *United States v. Cromitie*, 727 F.3d 194, 217-19 (2d Cir. 2013). Given this standard, "the burden of establishing outrageous [government] conduct is very heavy." *United States v. Rahman*, 189 F.3d 88, 131

---

[3] Presumably, defense counsel does not take issue with the government seeking to speak with potential adverse witnesses, as he has done precisely the same in this case. (Dkt. 24 at 4.)

(2d Cir. 1999). Generally, this burden is only met where "the government's involvement in a crime . . . involve[s] either coercion or a violation of the defendant's person." *United States v. Al Kassar*, 660 F.3d 108, 121 (2d Cir. 2011) (citations omitted); *cf. United States v. Kelly*, 707 F.2d 1460, 1476 (D.C. Cir. 1983) (holding that due process limits are only violated where government misconduct includes "coercion, violence or brutality to the person").

In attempting to meet this heavy burden, it is not enough for a defendant to show that "the government created the opportunity for the offense." *United States v. Bout*, 731 F.3d 233, 238 (2d Cir. 2013) *citing Al Kassar*, 660 F.3d at 121. Indeed, instances of government agents going much further, to the point of providing coaching on how to commit the crime, offering cash inducements, supplying defendants with materials essential to commit the crime, feigning friendship, or even conducting a controlled prison breakout have been found insufficient to support a finding of outrageous government misconduct. *See Bout*, 731 F.3d at 238-39 (collecting cases); s*ee also United States v. Caraher*, 973 F.3d 57, 63-62 (2d Cir. 2020) (holding that government operation of website involved in dissemination of child pornography, which defendant accessed, did not constitute outrageous government conduct).

### B.  The FBI Agents Who Interviewed the Defendant Did Not Engage in Any Misconduct.

The defendant has not provided a single piece of evidence that the government agents who interviewed him engaged in misconduct, let alone outrageous misconduct. As stated above, the agents sought to interview the defendant, a prospective witness for Gerace. This interview was purely voluntary. (Dkt. 24 at 8-9). There was no compulsion or coercion. The defendant could have declined to be interviewed and he could have ended the interview at any point. He chose not to. And he chose to lie. Not only was there no coercion, there was

not even any subterfuge. *Cf. United States v. Sabri*, 973 F. Supp. 134, 146-47 (W.D.N.Y. 1996) (finding that government's enlistment of attorney representing defendant in civil proceedings and active use of attorney-client relationship to investigate and obtain evidence against the defendant was sufficiently outrageous to merit dismissal of a count in the indictment). The defendant knew he was meeting with and being questioned by government agents.  And as a law enforcement officer himself, he knew better than most the importance of being truthful.

The defendant faults the government agents for not immediately confronting him about his false statements when he made them.  Specifically, defense counsel contends that the agents—upon being repeatedly lied to by the defendant—should have shared with the defendant the evidence that they had previously gathered, such as the text messages between Gerace and the defendant on the defendant's personal cellphone, and given the defendant "an opportunity to correct or explain any apparent misstatements." (Dkt. 24 at 9.)[4]  Defense counsel cites no case law to support the notion that this perceived inaction on the agents' part was outrageous misconduct, because of course it was not.  The agents were under no duty to prevent the defendant from making false statements.   "The fact that the government could have stopped the crime from occurring does not mean that the government 'actually caused' the crime" such that the conduct could support a claim of outrageous government conduct. *Caraher*, 973 F.3d at 63-64 *citing United States v. Chin*, 934 F.2d 393, 400 (2d Cir. 1991).  The defendant's failure to adduce any evidence of misconduct by government agents should be fatal to his motion to dismiss the indictment.

---

[4] To be clear, and as the government will prove beyond a reasonable doubt at trial, there was no need for any "clarification" regarding the defendant's statements.  The defendant's statements were perfectly clear; they were just false.  Nor were they the result of "a game of 'gotcha' involving the times and number of [the defendant's] contacts" with Gerace. (Dkt. 24 at 9.)  They were a series of false statements that were all designed to minimize the defendant's relationship and interactions with Gerace.

C. *Defendant's Speculation Regarding the Decision to Charge Him Is Irrelevant to His Motion.*

The defendant's various claims about the timing and motivation for charging him with violating federal law have no bearing on his motion to dismiss the indictment for alleged outrageous government conduct. Claims of outrageous government conduct pertain to the conduct either of government agents or of certain individuals, such as confidential informants, whose conduct can, under certain circumstances, be treated as if it was conduct of government agents. *See United States v. Myers*, 692 F.2d 823, 836 (2d Cir. 1983) (distinguishing between entrapment, which focuses on the defendant's predisposition, and outrageous government conduct, which "focuses on the conduct of government agents"). The government is not aware of any cases analyzing a decision to charge a defendant through the lens of a claim of outrageous government conduct.[5] Moreover, the Supreme Court has long held that prosecutors enjoy broad discretion in enforcing the law, and the decision to prosecute is generally not subject to judicial review. *Wayte v. United States*, 470 U.S. 598, 607 (1985).

According to the defendant, because he was charged with lying to federal agents after he was included on a witness list in the Gerace trial, *post hoc ergo propter hoc*, he was charged *because* of this and "for the specific purpose of preventing [the defendant] from being called as a witness by Mr. Gerace." (Dkt. 24 at 6.)[6] This is nothing more than rank speculation. It should go without saying that the government has a substantial federal interest in investigating and charging individuals who lie to federal agents, particularly where the individual in question is a sworn law enforcement officer. That being said, investigations take time,

---

[5] The defendant has not claimed selective or vindictive prosecution, a typical mechanism through which a charging decision can be challenged. This is presumably because such a claim would be meritless.

[6] The government notes that the fact that the defendant has been charged with a crime does not in fact prevent him from being called as a witness.

government resources are finite, and it is often not possible to charge criminal conduct immediately after it has occurred.  It is for this reason that most federal crimes, including the crime alleged in this indictment, have a five-year statute of limitations.  The simple fact that the defendant was charged with a crime a little over a year after it occurred and approximately five months after he was included on a witness list in the Gerace trial does nothing to show that the government's actions were in any way improper. *Cf. United States v. Pacheco*, No. 11-cr-121-A, 2015 WL 3402832, at *10 (W.D.N.Y. May 27, 2015) (rejecting claim of outrageous government conduct on the basis that the government waited two years after seizing defendant's devices to obtain a search warrant authorizing the search of the devices).  The defendant's allegations about the government's motives for charging him are unsupported and irrelevant to his motion to dismiss the indictment and should be entirely disregarded by the Court.

### III.    The Defendant's Motion to Inspect the Grand Jury Minutes Is Baseless and Should Be Denied.

The defendant's motion to inspect—or have the Court inspect—the grand jury transcripts for this case should be denied because the grand jury returned a valid indictment and the defendant has not satisfied his burden to show that any review of the grand jury transcripts is necessary.

Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure, a Court may only permit disclosure of matters occurring before the grand jury "at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the Grand Jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  That rule, as authoritatively construed, places the burden upon a defendant to show a particularized need

for grand jury minutes which outweighs the policy of secrecy and presumption of regularity before such minutes are turned over.  *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959); *In Re Grand Jury Investigation (General Motors Corp.)*, 32 F.R.D. 1975 (S.D.N.Y.), *appeal dismissed*, 318 F.2d 533, *cert. denied*, 375 U.S. 802 (1963).  The defendant has made no such showing here and thus his motion should be denied.

There is a presumption that grand jury proceedings are lawful and regular.  *Hamlin v. United States*, 418 U.S. 87, 139 n.23 (1974); *United States v. Salameh*, 152 F.3d 88, 109-110 (2d Cir. 2004); *United States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990).  In *United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991), the Supreme Court reaffirmed that "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *Id.* at 300.  As the court noted in *United States v. Elliott*, "[i]t is axiomatic that an indictment returned by a legally constituted and unbiased grand jury is valid on its face, and is enough to call for a trial of the charge on the merits."  363 F. Supp. 2d 439, 451 (N.D.N.Y. 2009) (citing *United States v. Williams*, 504 U.S. 36, 54 (1992)).  Thus, it is incumbent on the defendant to demonstrate "a 'particularized need' or 'compelling necessity' for disclosure which outweighs the policy of grand jury secrecy."  *Elliott*, 363 F. Supp. 2d at 451 (*citing* Fed. R. Cr. P. 6(e)).  Resultingly, "review of grand jury minutes is rarely permitted without specific factual allegations of governmental misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010).  Additionally, indictments are not open to challenge on the ground that they are unsupported by sufficient or competent evidence.  *United States v. Calandra*, 414 U.S. 338, 345 (1974).

Here, the defendant fails to offer *any* particularized justification in requesting the grand jury transcripts. Instead, the defendant asks the Court to review the grand jury transcripts because he claims—without support—"that there was insufficient legal evidence to support the charges for the sole count of the indictment." (Dkt. 24 at 11.) [7] This is precisely the type of challenge the Second Circuit explicitly foreclosed in *Calandra*. 414 U.S. at 345; *see also United States v. Parlato*, 15-cr-149-FPG-JJM, 2017 WL 9487081, at *2 (W.D.N.Y. Feb. 13, 2017) (citing with approval the holding in *Calandra* and recommending that the defendant's motion for disclosure of grand jury minutes be denied) *adopted in United States v. Parlato*, 2017 WL 2952832, at *4 (W.D.N.Y. July 10, 2017).

Nor is there any basis for the defendant to claim that review of the grand jury minutes is necessary "to permit the Court and the defendant to determine the actions for which the defendant was indicted, to protect against double jeopardy and to permit meaningful appellate review of any conviction." (Dkt. 24 at 11.) The indictment provides sufficient detail of the crime that the defendant is alleged to have committed. [8] The indictment sets forth the date that the offense took place and delineates the statements made by the defendant that the grand jury found probable cause to believe were false, the defendant knew to be false, and were material. (Dkt. 14.) In addition, the defendant has been provided with discovery. This includes, *inter alia*, a recording of the interview conducted by the FBI agents on September 30, 2022 that forms the basis for the charge in the indictment, as well as text messages and

---

[7] The defendant attempts to create a discrepancy between the Indictment's allegation that the defendant's statement that his last contact with Gerace was in January 2017 and his statement during the interview that he had contact with Gerace in April 2019. (Dkt. 24 at 12.) The latter statement does not cast doubt on the falsity of the former. The government will prove at trial that the defendant did in fact have contact with Gerace between January 2017 and April 2019 and that the defendant knowingly and willfully failed to disclose these contacts.

[8] Ironically, it would contain less detail if the defendant's motion to strike surplusage was granted.

call logs between the defendant and Gerace.  Based on this, the indictment in this case is sufficiently particular and provides the defendant with adequate notice such that he can prepare his defense or raise a claim of double jeopardy.  Therefore, the defendant's motion in this regard should be denied.


**IV.    There Is No Basis To Require the Government to Provide a Bill of Particulars in this Case.**

The defendant requests that the Court order the government to provide a bill of particulars containing a variety of information. (Dkt. 24 at 13.)  The defendant provides no support for his various requests, which are generally an inappropriate attempt to require the government to preview its trial evidence. Furthermore, the defendant's requests are unjustified given the detail provided in the indictment, the previously filed criminal complaint, and the discovery that the government provided over six months ago.

While it is within this Court's discretion to order the filing of a bill of particulars, "the burden is upon [the] defendant[] to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights." *Parlato*, 2017 WL 9487081, at *13 (citing *United States v. Duarte*, 13-cr-204, 2014 WL 29366, at *1 (W.D.N.Y. Jan. 3, 2014)).  Here, the defendant has done nothing to satisfy his burden other than claiming in conclusory fashion that without such relief, "the defense cannot adequately investigate, prepare, or conduct a defense."  (Dkt. 24 at 13.)  The defendant's failure to support his motion in any way should preclude the defendant's request. Nevertheless, if the Court considers the merits of the defendant's motion, it can consider such factors as: (1) the complexity of the charges, (2) the clarity and level of detail in the indictment, and (3) the degree of discovery available to the defendant. *United States v. Santiago*, 174 F.

Supp. 2d 16, 34 (S.D.N.Y. 2001) (citing *United States v. Shoher*, 555 F.Supp. 346, 349 (S.D.N.Y. 1983)). Each of these factors weighs in favor of denying the defendant's request.

A bill of particulars is intended to allow a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). In this regard, a bill of particulars is appropriate only where the information sought is *necessary*, and not merely helpful. *United States v. Aliperti*, 867 F. Supp. 142, 148 (E.D.N.Y. 1994). A bill of particulars is necessary only if "directed to curing defects in an indictment—that is, a bill of particulars clarifies the charges against the defendant." *United States v. Gotti*, 784 F. Supp. 1017, 1019 (E.D.N.Y. 1992).

A bill of particulars "should not be substituted for a form of discovery—it 'should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." *United States v. Cobb*, 544 F. Supp. 3d 310, 326 (W.D.N.Y. 2021) (quoting *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994)). The government is not obligated to disclose either the manner in which it will attempt to prove the charge or the precise manner in which the defendant committed the crime charged. Nor is it appropriate for a defendant to use Rule 7(f) as a mechanism to limit the government's evidence or flush out its prosecutorial theories in advance of trial. *See United States v. Weinberg*, 656 F. Supp. 1020, 1029 (E.D.N.Y. 1987) (overruled on other grounds); *see also United States v. Ianniello*, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985) ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars").

Even if a bill of particulars is an appropriate mechanism for the requested information, the request should still be denied "if the information sought by the defendant is provided in the indictment or in some acceptable alternate form." *United States v. Pirk*, 267 F. Supp. 3d 392, 403 (W.D.N.Y. 2017) (internal quotation and citation omitted); *see also United States v. Ojeda*, 412 Fed. Appx. 410, 411 (2d Cir. 2011) ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means") (citation omitted).

Here, the defendant requests information beyond what a bill of particulars is intended to provide. The indictment specifies the particulars for the alleged offense, including the elements of the offense charged, the date on which the charged conduct took place, the specific statements that the government will prove at trial were false, and the statutory citation for the violation. This level of detail alone largely serves as an adequate basis to deny the defendant's motion for a bill of particulars. Unsurprisingly, courts have rejected similar requests as the defendant makes here. *See, e.g.*, *Pirk*, 267 F. Supp. 3d at 403-04 (holding that in the context of an indictment charging the defendant with providing false testimony and where the defendant had been provided with all his prior statements, "[a]ll the defendant needs to do is compare his answers and statements to the details provided in Count 1 of the indictment"); *United States v. Jabar*, 09-cr-170, 2011 WL 13364609, at *3 (W.D.N.Y. July 11, 2011) (recommending that defendant's motion for bill of particulars be denied where each false statement was adequately particularized in the indictment).

It is worth noting that the charge against the defendant is not complex, difficult to understand, or even broad, such that a bill of particulars might be more appropriate. *See, e.g.*, *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir.1998) (holding that a bill of particulars is

appropriate "where a conspiracy count covers a complex series of events over a number of years, but [the indictment] provides only the bare bones of the charge"); *United States v. Davidoff*, 845 F.2d 1151, 1154–55 (2d Cir. 1988) (noting that principles governing bills of particulars "must be applied with some care when the [g]overnment charges criminal offenses under statutes as broad as RICO"); *United States v. Garner*, 17-CR-49-LJV-MJR, 2017 WL 7661427, at *3-4 (W.D.N.Y. Nov. 30, 2017) (denying motion for bill of particulars for conspiracy charge that "spanned only six months and does not appear to have been particularly complex") *report and recommendation adopted*, 2018 WL 827146 (W.D.N.Y. Feb. 12, 2018).  In short, the indictment is a straightforward charging instrument that contains a level of precision that by itself is a sufficient basis for this Court to deny the defendant's demand for a bill of particulars.

Even if the defendant's request for a bill of particulars is justified—it is not—much of the requested information is contained in the criminal complaint that preceded the indictment in this case or in the discovery that the government provided many months ago, which further supports denying the defendant's request.  The criminal complaint is supported by a detailed affidavit that sets forth the specific statements that the government will prove were false, the date that the false statement were made, and provides some of the key evidence supporting their falsity, including text messages between the defendant and Gerace.  *Id.*

The government has also provided substantial discovery under Rule 16.  This material, which is not particularly voluminous, included text messages and call logs between the defendant and Gerace, a recording of the defendant's interview by the FBI on September 30, 2022, and APD records concerning the investigation into the theft of Gerace's watch and the arrest of Individual 1.  Taken together, the criminal complaint, the indictment, and the

discovery produced by the government in this matter has provided the defendant with ample notice of the specifics of the crime with which he is charged. Accordingly, for the reasons stated, the defendant's motion for a bill of particulars should be denied.

**V.    The Government Has Provided Sufficient Notice Pursuant to Federal Rule of Criminal Procedure 12(b).**

In its discovery letters to the defendant dated January 24, 2024 and February 12, 2024, the government provided notice that it intended to use at trial all items of evidence that the defendant had been provided with in discovery or been made aware of. *See, e.g.*, Dkt. 24-2 (government discovery letter to defendant dated Jan. 24, 2024). This satisfies the notice requirements of Federal Rule of Criminal Procedure 12(b)(4). *See, e.g.*, *United States v. Crosby*, 08-cr-186, 2011 WL 13371253, at *2 (W.D.N.Y. April 7, 2011) ("The Government's statement that all disclosed evidence would be used at trial satisfies Rule 12(b) notice"). As noted above, the discovery in this case is not voluminous. The defendant has therefore had ample "opportunity to suppress any such evidence before trial." (Dkt. 24 at 19.) The Court should therefore deny the defendant's request to reserve his rights to supplement his request for a bill of particulars or to bring further motions.

**VI.    The Government Has Complied With Its Discovery Obligations and Will Continue To Do So.**

The defendant makes various requests for disclosure under the auspices of Rule 16 of the Federal Rules of Criminal Procedure and other authorities. (Dkt. 24 at 19-24). Most of the defendant's requests appear to be boilerplate discovery requests that far exceed the bounds of information required to be disclosed under Rule 16 and bear little relation to the instant

case.  As to these, the government generally responds to the defendant's request by stating that it has, to date, fully complied with its discovery obligations, will continue to do so, and declines to provide discovery beyond that which is required.  In federal court, "pre-trial discovery in criminal cases is strictly circumscribed."  *United States v. Nelson*, 606 F. Supp. 1378, 1379 (S.D.N.Y. 1985).  "Although Rule 16(a) [of the Federal Rules of Criminal Procedure] provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him."  *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974).  Nevertheless, as already noted, the government has provided a significant amount of discovery material to the defendant and the government has not refused the defendant access to any items falling within Rule 16.

In regard to the defendant's more specific requests, it is correct that the government has not provided the defendant with a full extraction of the cellphone belonging to Gerace that was seized pursuant to border search authority on April 27, 2019.  (*See* Dkt. 1 at 6.)  The government has had several conversations with defense counsel about this topic and provided a written response to the defendant's request for a full extraction in a letter dated April 16, 2024.  As stated in the letter, the government has provided the defendant with all the messages that were found on the phone between the defendant and Gerace.  The government additionally provided records from the phone showing that the defendant was listed as a contact in the phone, as well as documentation regarding the seizure of the phone.  It is the government's position that this satisfies its discovery obligations with respect to the Gerace phone and defendant's motion does not alter this analysis.

In addition, the defendant requests all records provided in response to a grand jury subpoena issued to the APD in this matter.  The government does not understand why the

defendant concludes that, based on the government's January 24, 2024 discovery letter, only excerpts of this subpoena response were provided.   The discovery letter states that the government produced "[r]ecords from the Amherst Police Department ("APD") regarding [the defendant] and also APD Complaint # 19-913390."   There is no mention of only providing excerpts of such records.   Regardless, the government has produced as discovery all the records that it received from the Amherst Police Department in response to the referenced subpoena.   The defendant's discovery demand in this regard should thus be denied as moot.

**VII.   Early Production of Jencks Materials Is Unnecessary in this Case.**

The defendant seeks early disclosure of witness statements covered by Title 18, United States Code, Section 3500 (the "Jencks Act"). (Dkt. 24 at 24.) The defendant does not set forth a sufficient basis to justify why early disclosure of such materials is necessary in this case.   In what may be either boilerplate or briefing from a filing in a different case, the defendant states that "the government's case appears to be built largely, if not exclusively, on the testimony of cooperating witnesses who have not been identified, one or more of whom may have participated in the planning, execution, or concealment of the crimes charged in the indictment."   (Dkt. 24 at 24-25.)   This is simply incorrect, as the defendant presumably knows from his review of the discovery provided.   The government will comply with our practice and the trial court's practice to disclose witness statements before trial.   That practice should be followed here because the defendant has failed to make any showing of good cause for the relief that he seeks.

## VIII.   The Court Should Deny the Defendant's Motion for Early Disclosure of the Defendant's Other Crimes or Bad Acts.

The defendant requests the Court to compel the disclosure of evidence pursuant to Rule 404(b) of the Federal Rules of Evidence forty-five days prior to trial.  (Dkt. 24 at 25-26.)[9] The Court should deny this motion.  Rule 404(b) of the Federal Rules of Evidence provides that the prosecution "shall provide *reasonable notice in advance of trial . . .* of the general nature of any such evidence [of other crimes, wrongs, or acts] it intends to introduce at trial." Fed. R. Evid. 404(b) (emphasis added). No set timetable for notice is required, however, because evidence the government may seek to offer at trial often changes as the proof unfolds or as possible defenses are revealed at trial. *United States v. Aguirre-Parra*, 763 F. Supp. 1208, 1217 (S.D.N.Y. 1991). What constitutes reasonable notice "depends on the circumstances of the particular case." *United States v. Reddy*, 190 F. Supp. 2d 558, 577 (S.D.N.Y. 2002).   The District Court judge assigned in this case typically requires such disclosure by a date certain prior to trial.  The government will provide notification of any Rule 404(b) evidence it intends to introduce at trial well in advance of trial.  The trial in this matter, however, has not yet been scheduled.  The defendant's motions, thus, should be denied as premature. *See United States v. Birkett*, No. 99-cr-338, 1999 WL 689992, *6 (S.D.N.Y. Sept. 2, 1999) (denying as premature defendants' motion for 404(b) evidence).

---

[9] The defendant requests this order "pursuant to Rule 16(a)(1)(c)." (Dkt. 24 at 25.) Rule 16(a)(1)(c) relates to organizational defendants and disclosure of statements by individuals who are able to bind the organization. F.R.Crim.P. 16(a)(1)(C).  The government does not understand the relevance of this rule in relation to the defendant's motion.

**IX.     Defendant's Request Regarding Preservation of Evidence and Rough Notes Is Moot.**

The defendant moves this Court to issue an order requiring all government agents to preserve physical evidence in this case, including any rough notes taken as part of the investigation.  (Dkt. 24 at 26-27.)  The government will preserve the physical evidence it has collected in this case and further agrees to, and has already instructed the criminal agents involved in this matter to preserve their rough notes.  Therefore, this issue is moot.

**X.      The Government Will Comply With Its Obligations Regarding Disclosure of Expert Witnesses.**

At present, the government does not intend to call an expert witness at trial.  If it does so, the government will comply with all the requirements of Federal Rule of Criminal Procedure 16(a)(1)(G), including providing the required disclosures sufficiently before trial, as determined by the trial court.

**XI.     Defendant's Motion to Limit Cross-Examination Should be Denied.**

The defendant moves this Court to order the government to disclose its impeachment testimony.  (Dkt. 24 at 29.)  The purported basis for this motion is Federal Rule of Evidence 609, which addresses impeachment of a witness by evidence of a criminal conviction.  *Id.*  The government is not aware of the defendant having a criminal conviction and as such Rule 609 would not apply to the defendant.  And even if it were so inclined, the government cannot provide any disclosure pursuant to Rule 609 for other defense witnesses given that the

defendant has not advised the government of the identity of the witnesses he plans to call at trial.  For these reasons, the defendant's motion to limit cross examination should be denied.[10]

## XII.    Defendant's Request to Bring Further Motions Should be Denied.

The defendant requests leave to submit further motions. (Dkt. 24 at 30.)  The defendant will be able to raise legal issues before trial to the extent they are not stale under Rule 12(b).  However, the Court should not grant the defendant's blanket request for permission to make additional motions.  If, at a later date, the defendant seeks to file a meritorious pretrial motion and can establish good cause for having failed to make such motion by the pretrial motions deadline that the Court has set in this case, the government will not oppose it.  But the Court should not excuse the defendant, in advance, of the requirement that he establish good cause for make a late pretrial motion.

## XIII.   The Government's Request for Reciprocal Discovery

Pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, the government hereby requests reciprocal discovery from the defendant.   Specifically, the government requests that it be allowed to inspect and copy books, papers, documents, photographs, tangible objects, or copies or portions thereof which are within the possession, custody, or control of the defendant which the defendant intends to introduce as evidence in his case-in-chief at the trial.  Fed. R. Crim. P. 16(b)(1)(A).

Additionally, the government requests to inspect and copy any results or reports of physical or mental examinations and/or of scientific tests or experiments made in connection

---

[10] To the extent the defendant also brings this motion pursuant to Federal Rule of Evidence 404(b), (Dkt. 24 at 29), that is addressed in Section VIII *supra*.

with this case within the possession or control of the defendant which the defendant intends to introduce as evidence in his case-in-chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness's testimony.  Fed. R. Crim. P. 16(b)(1)(B).

Furthermore, the government requests a written summary of any expert testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence. Fed. R. Crim. P. 16(b)(1)(C).

As of this date, the defendant has not provided any reciprocal discovery to the government.

Pursuant to Federal Rule of Evidence 807, the government also requests disclosure in advance of trial, at a time to be set by the district judge, of any statements the defendant proposes to utilize at a trial of this matter under the residual exception to the rule against hearsay.

In the absence of any opposition by the defendant, it is respectfully requested that the relief sought, consistent with Federal Rule of Criminal Procedure 16 and Federal Rule of Evidence 807, be granted.

DATED:  Buffalo, New York, July 30, 2024.

TRINI E. ROSS
United States Attorney

BY:    /s/ DOUGLAS A. C. PENROSE
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5868
Douglas.Penrose@usdoj.gov