# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | **AFFIRMATION IN SUPPORT OF DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE** |
| -vs- | |
| GREGORY TROTTER, | |
| Defendant. | 24-CR-60-LJV-JJM |

I, DONALD M. THOMPSON, ESQ., affirm under penalty of perjury pursuant to 28 U.S.C. § 1746, that:

1. I am an attorney licensed to practice in the State of New York and the United States District Court for the Western District of New York and I represent Detective Trotter in the above-captioned matter. I make the arguments herein in support of Detective Trotter's reply to the government's response to his pretrial motions.

## MOTION TO STRIKE SURPLUSAGE FROM INDICTMENT

2. Defendant requested an order striking paragraphs 2-8 from the indictment as surplusage, which do not allege any improper or criminal conduct and are irrelevant to the alleged false statements recited in paragraph 9.

3. The allegations in those paragraphs are consistent with the government's claims that, irrelevant to the 18 U.S.C. § 1001 charge in the indictment, Detective Trotter was a law

1

enforcement officer allegedly "groomed" by Peter Gerace, Jr. to do his bidding and used his position to improperly benefit Mr. Gerace.

4. The government has repeatedly and explicitly asserted these claims not only in the criminal complaint in this case, but also, for example at the arraignment on March 24, 2023 of Mr. Gerace on indictment 23-cr-00037 (Dkt 6, 12-13).

5. There is no evidence in the discovery provided that would offer support for the government's assertions that Detective Trotter engaged in any improper relationship with Mr. Gerace or that Detective Trotter, as a result of such relationship or otherwise, used his position to improperly benefit Mr. Gerace by, for example, arresting or charging former paramours of Mr. Gerace for crimes (which the government does not claim they did not commit, or were wrongfully arrested for).

6. More to the point, the allegations in paragraphs 2-8 are irrelevant to prove any element of the crime charged in the indictment. Because the allegations are both irrelevant and unsupported, they are merely "inflammatory and prejudicial" and should be stricken.

## MOTION TO DISMISS INDICTMENT; OUTRAGEOUS GOVERNMENT MISCONDUCT

7. The government admits that agents first elected to speak with Detective Trotter after he was identified as a possible witness for Mr. Gerace by Mr. Gerace's counsel (Dkt 25, 5). It then goes on to misrepresent that F.B.I. agents employed no subterfuge when interviewing Detective Trotter (*id.* at 6-7). In fact, the agents represented that they wanted

to speak to the detective as a fellow law enforcement officer, about law enforcement business, essentially officer-to-officer, concerning his knowledge of the Gerace/Bongiovanni prosecution.

8. The agents did not, as with other witnesses, advise the detective that false statements (even mistaken, if an agent believes they were intentional) could be charged as a crime. The government goes on to somewhat misleadingly allege that the detective "knew he was meeting with and being questioned by government agents" suggesting an accusatory confrontation, which was a message that, as the recording of the conversation provided in discovery demonstrates, the agents went out of their way not to impart, spending fully half of their conversation with the detective discussing common concerns and issues facing law enforcement officers.

9. The government also asserts, without any basis, that the detective "knew better than most the importance of being truthful" (*id.*). But lying (or mistakenly making misrepresentations that a government agent believes are intentionally untruthful) is not a crime when speaking to state-level law enforcement officers, nor is it a federal crime that state-level law enforcement officers are necessarily aware of by virtue of their job in law enforcement.

10. The government asserts that the detective "chose to lie" and "repeatedly lied" to minimize his "relationship and interactions with Gerace" absent any evidence that at the time the detective's statements were made, they were made intentionally with knowledge of their

3

falsity (*United States v. Yermian*, 468 U.S. 63 [1984]; *United States v. Clifford*, 426 F.Supp. 696 [E.D.N.Y. 1976]).

11. Further, the government does not suggest why the detective would attempt to minimize his relationship or interactions with Mr. Gerace. Apart from Detective Trotter's statements, the government has not claimed that he misused his position to benefit anyone else, or did anything else that was improper. There is no supported allegation in this or any other proceeding that any of the detective's interactions with Mr. Gerace, including filing multiple charges against Mr. Gerace's ex-wife, Katrina Nigro, and charging Gerace's former girlfriend, Phlycia Hunt with stealing his Rolex, constituted anything other than good police work.

12. Nonetheless, the government has chosen to criminally charge Detective Trotter, specifically because, he asserts, he was identified by Mr. Gerace's counsel as a witness *for* Mr. Gerace as opposed to by the government as a witness *against* Mr. Gerace, as demonstrably dishonest (but uncharged under 18 U.S.C. § 1001) witnesses like Katrina Nigro and Phylicia Hunt were.

13. On November 28, 2023, Detective Trotter was charged by criminal complaint with the single count included in the above-numbered indictment, relating to a conversation with two special agents of the F.B.I. on or about September 30, 2022 about events the occurred at least three years earlier relating to his actions as an Amherst Police Detective in the investigation of a Rolex watch allegedly stolen from Mr. Gerace by Ms. Hunt.

14. The government claims now, an argument also used in Mr. Gerace's case, that because the charges were filed within the statute of limitations no inference can be drawn from the delay in charging Detective Trotter. This claim is belied by the chronology of events, however.

15. Before the filing of Mr. Gerace's witness list, the government was apparently unconcerned about whether Detective Trotter was able to accurately recall, when he spoke to agents in 2022, the dates and frequency of his contacts with Mr. Gerace for legitimate police business when Phlycia Hunt stole Mr. Gerace's Rolex in 2019 and during the preceding years when Katrina Nigro committed serial violations of orders of protections issued in favor of Mr. Gerace.

16. It was only after the filing of Mr. Gerace's witness list which included Detective Trotter that the government elected to allege that Detective Trotter's memory was not simply faulty but rather, that he intentionally and criminally made statements to agents that were materially false, to distance himself from Mr. Gerace (although it is unclear why he would, since the government does not allege how his contacts with Mr. Gerace were improper).

17. With respect to the government's bad faith, the defense contends that in charging Detective Trotter the government doesn't actually care whether his statements to agents were mistaken or intentionally false, or whether it could ever sustain its burden of proving the elements of an 18 U.S.C. § 1001 violation. Rather, it is the pendency of the charge, making Detective Trotter unavailable as a witness to Mr. Gerace to assail the credibility of Katrina

Nigro and Phlycia Hunt that achieves the government's goal, furthering its chances of successfully prosecution Mr. Gerace, without more. The actual prosecution of Detective Trotter for, remarkably, failing to recall dates and numbers of contacts with a single victim years prior – "misrepresentations" heretofore apparently never prosecuted in this District, not surprisingly – is simply a collateral consequence of achieving that underlying goal.

### MOTION FOR DISCOVERY; RESERVATION OF RIGHTS

18. The defense renews its request for a copy of the full digital extractions from Mr. Gerace's phones which were seized by the government.

19. To date the government has turned over excerpts of the extractions of Mr. Gerace's phones that it contends relate directly to Detective Trotter, including intercepted text communications, call logs with calls to or from Detective Trotter's phone number by Mr. Gerace, and a record of Detective Trotter in Mr. Gerace's cell phone contacts list.

20. The government has repeatedly alleged in the criminal complaint and in the prosecutions of Mr. Gerace and his codefendants, that Mr. Gerace "groomed" judges, law enforcement officers, and others in positions of authority in order to benefit himself and that, in the absence of any actual evidence, Detective Trotter was one of those individuals (which, if true, could arguably supply a motive to falsely report his relationship with Mr. Gerace to federal agents).

21. Upon information and belief, the government has offered credible evidence of such improper relationships between Mr. Gerace and others in positions of authority, including, among others, a state Supreme Court justice.

22. Upon information and belief, text messages, call logs, contact lists, and possibly photos or recordings recovered in the extraction of Mr. Gerace's cell phones could reveal the nature and extent of improper relationships that others engaged in with Mr. Gerace while, by contrast, revealing no such relationship between Mr. Gerace and Detective Trotter. This information, however, is in the exclusive possession of the government.

23. This information, to which Detective Trotter has no access absent an order from the Court directing its disclosure, implicates his constitutional right to present a defense (*see, e.g., Holmes v. South Carolina*, 547 U.S. 319 [2006]). The government has no superior interest in nondisclosure: upon information and belief, the disclosure requested has already have been provided to Mr. Gerace and others. Detective Trotter therefore requests an order directing disclosure of the full extractions of Mr. Gerace's cell phones in the government's possession.

### RESERVATION OF RIGHT TO BRING FURTHER MOTIONS

24. Defendant requests an order reserving his right to file additional motions based on the provision of a Rule 12(b) notice by the government, the provision of further discovery or the government's continuing compliance with its ongoing discovery obligations.

25. In the meantime, the defense has endeavored to encompass within this omnibus motion those pre-trial prayers for relief that may be made based upon the information currently available to the defense.  I request that the Court grant the defense leave to submit subsequent motions, should facts discovered through further discovery, these motions, hearings relating to these motions, or the filing of a superseding indictment indicate that further motions are appropriate.

WHEREFORE, defendant requests that this Court issue an order granting the relief sought by these motions or, in the alternative, directing hearings permitting the introduction of further proof in support of said motions, and for such other and further relief as is just and proper under of the circumstances of this case.

Dated: August 6, 2024

> s/Donald M. Thompson
> DONALD M. THOMPSON, ESQ.
> Attorney for GREGORY TROTTER