UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                      **REPORT,**
                                                     **RECOMMENDATION**
                                                     **AND ORDER**

v.

                                                     24-CR-0060(LJV)(JJM)

GREGORY TROTTER,

                       Defendant.
_____

        Defendant Gregory Trotter is charged in a one-count Indictment [14][1] with making false statements in violation of 18 U.S.C. §1001(a)(2). Trotter, a detective with the Amherst Police Department, allegedly made false statements to agents of the Federal Bureau of Investigation ("FBI") during a September 30, 2022 interview concerning his relationship with Peter Gerace, Jr. and his involvement into a criminal investigation instituted by Gerace. Before the court are the remaining portions of Trotter's omnibus pretrial motion [24],[2] as well as the government's cross-motion for reciprocal discovery. *See* Government's Response [25] at 21-22.

        Having considered the parties' briefing [24-26] and heard oral argument on August 20, 2024 [27], for the following reasons the government's cross-motion is granted, Trotter's motions for non-dispositive relief are denied, and I recommend that Trotter's motion be to dismiss the Indictment also be denied.

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]     In an August 17, 2024 e-mail with my chambers, Trotter's counsel confirmed that the issues requiring a decision included those identified in Trotter's Reply [26], as well as his motions for a bill of particulars and to inspect grand jury minutes. I have treated all other issue raised in the motion [24] as resolved, without prejudice to renewal.

## BACKGROUND

According to the Indictment, between about February 2017 and April 2019, Trotter "had contact, both professional and personal", with Gerace. [14], ¶2. In March 2019, Gerace filed a police report with the Amherst Police Department concerning the alleged theft of a Rolex watch. Id., ¶3. Allegedly, within hours of filing that report, Gerace texted Trotter on his personal cell phone, informing him that the report had been filed and asking if Trotter had seen it. Id., ¶4. Throughout Trotter's investigation of the theft, he allegedly used his personal cell phone to exchange text messages with Gerace concerning the status of the investigation. Id., ¶5. On April 9, 2019, Trotter participated in the arrest of an individual in connection with the alleged theft, and allegedly exchanged text messages with Gerace concerning the arrest, including Trotter being told by Gerace where the arrestee could be located. Id., ¶6.

In 2021 Gerace was indicted on federal charges unrelated to the theft of the Rolex watch or the Amherst Police Department's investigation into its theft. Id., ¶7.[3] On September 30, 2022, the FBI interviewed Trotter, during which he allegedly:

> "denied having contact with Gerace after January 2017; stated that his involvement in the investigation into the theft of the Rolex watch was limited to taking a statement from Gerace; and stated that Gerace had never reached out to him or contacted him regarding the investigation".

Id., ¶9.

---

[3] Gerace is currently a defendant in several federal indictments: 19-CR-0227; 23-CR-0060; and 23-CR-0099.

## DISCUSSION

A. **Trotter's Motions**

 1. **Dismiss the Indictment for Outrageous Government Conduct**

"The concept of fairness embodied in the Fifth Amendment due process guarantee is violated by government action that is fundamentally unfair or shocking to our traditional sense of justice . . . or conduct that is 'so outrageous' that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction against the accused." United States v. Schmidt, 105 F.3d 82, 91 (2d Cir. 1997). "Especially in view of the courts' well-established deference to the Government's choice of investigatory methods . . . the burden of establishing outrageous investigatory conduct is very heavy." United States v. Rahman, 189 F.3d 88, 131 (2d Cir. 1999).

Such claims are "rarely sustained, and generally only if the government was involved with the underlying criminal activity by means of coercion or violation of the defendant's person". United States v. Cacace, 796 F.3d 176, 192-93 (2d Cir. 2015). *See also* United States v. Williams, 372 F.3d 96, 112 (2d Cir. 2004) ("a due process challenge to an indictment based on outrageous government conduct has almost never succeeded"); United States v. Caraher, 973 F.3d 57, 63 (2d Cir. 2020) ("[i]n theory, government involvement in a crime may "become so excessive that it violates due process and requires dismissal of charges against the defendant even if the defendant was not entrapped").

However, the fact that a defendant may face an uphill battle in proving outrageous government conduct does not allow me to ignore the issue altogether. "[A] claim that the government has acted outrageously is taken seriously because ensuring that the government does

not trample in an unconscionable manner on individual dignity is a bed-rock duty of judicial officers.  Sometimes the government's involvement in manufacturing crime is demonstrably outrageous, and in those cases, the convictions of targeted defendants have been set aside." Schmidt, 105 F.3d at 91.

  The allegations presented by Trotter do not demonstrate misconduct, much less outrageous misconduct.  He does not claim that the FBI interview was custodial or that he was threatened or coerced during the course of the interview.  His claims that the agents "engaged in a game of 'gotcha'" and failed to "give him an opportunity to correct or explain any apparent misstatements" may be arguments to raise at trial (Thompson Affirmation [24], ¶¶24, 25), but fail to demonstrate that the noncustodial interview was outside the bounds of permissible investigatory procedures. See United States v. Colon, 71 F. Supp. 3d 269, 277 (D. Conn. 2014) ("the government's exploitation of a suspect's vulnerability or susceptibility to commit a crime is not the equivalent of actual coercion").  For instance, while Trotter complains that he was not advised at the outset of the interview that false statements could be charged as a crime (Thompson Affirmation [26], ¶8), Trotter acknowledged at oral argument that no such warning was required.

  While "it may be likely that [defendant] would not face the present charges if the FBI agents did not interview him, the interview itself did not constitute government overreach or intolerable conduct". United States v. Brennan, 2021 WL 2206308, *3 (E.D. Pa. 2021).  "The noncustodial interview was within the bounds of standard investigatory procedures and was a legitimate forum to give rise to potential § 1001 offenses." Id.

Trotter also contends that this "prosecution was manufactured for the specific purpose of preventing [him] from being called as a witness by . . . Gerace" in his criminal prosecution. Thompson Affirmation [24], ¶12. Specifically, he points to the fact that approximately five months after being named on Gerace's witness list, he was charged by Criminal Complaint. Id., ¶¶16-18. However, "[a] claim of outrageous government conduct is a claim that government conduct *in securing an indictment* was so shocking to due process values that the indictment must be dismissed". United States v. Dominguez-Caicedo, 40 F.4th 938, 948–49 (9th Cir. 2022), cert. denied, 143 S. Ct. 2615 (2023) (emphasis in original). *See also* United States v. Lacey, 86 F.3d 956, 963 (10th Cir. 1996) ("[t]he outrageous conduct defense . . . generally prevents the government from prosecuting a crime developed through egregious investigatory tactics"). The prosecutor's motivation for bringing charges has nothing do with the government's conduct in securing the Indictment against Trotter. Although challenges to prosecutorial charging decisions may be brought on selective or vindictive prosecution grounds, Trotter has not moved for such relief. *See* United States v. Miller, 2014 WL 4184392, *2 (N.D.W. Va. 2014) ("a prosecutor's charging decision is presumptively lawful", and this can only be overcome by a showing of selective or vindictive prosecution).

Finally, Trotter argues that none of the discovery produced thus far supports "the allegation that . . . [his] alleged misstatements . . . were 'material'". Thompson Affirmation [24], ¶28. Even if this were a proper basis for an outrageous government conduct claim, summary judgment generally "does not exist in federal criminal procedure", and "the sufficiency of the evidence is not appropriately addressed . . . pretrial". United States v. Sampson, 898 F.3d 270, 282 (2d Cir. 2018). Therefore, I recommend that this motion be denied.

## 2. Bill of Particulars

Fed. R. Crim. P. ("Rule") 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense". United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).[4]  "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999).  "[T]he burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights". United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y. 2014).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." United States v. Henry, 861 F.Supp.1190, 1197 (S.D.N.Y. 1994).

The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form." United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). See United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("[i]n determining whether a defendant has shown such necessity, the trial

---

[4]  Some courts have questioned the double jeopardy justification for granting particularization. See, e.g., United States v. Payden, 613 F.Supp. 800, 816 n.16 (S.D.N.Y. 1985).

court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery"). "The necessity of a bill of particulars depends on the nature of the charged crime." United States v. Meregildo, 2012 WL 3834732, *5 (S.D.N.Y. 2012).

        Trotter seeks the following particularization:

> "a. each statement by Detective Trotter where the government contends, as alleged in paragraph 9 of the indictment, that he 'denied having contact with Gerace after January 2017'";
>
> "b. each statement by Detective Trotter where the government contends, as alleged in paragraph 9 of the indictment, that he 'stated that his involvement in the investigation into the theft of the Rolex watch was limited to taking a statement from Gerace'";
>
> "c. each statement by Detective Trotter in which the government contends, as alleged in paragraph 9 of the indictment, that he 'stated that Gerace had never reached out to him or contacted him regarding the investigation' of the Rolex watch theft"; and
>
> "d. each statement or other information offered by Detective Trotter supporting its claim he made the above statements with knowledge of their falsity at the time they were made".

Thompson Affirmation [24], ¶51.

        Characterizing it as a "broadly worded" Indictment, Trotter argues that this particularization is required in order to prevent the government from expanding "the scope of the proof beyond the charges brought by the grand jury" or from shifting "the theory of liability from that upon which the grand jury voted". Thompson Affirmation [24], ¶¶44-47, 49. These arguments are belied by the Indictment, which narrowly identifies the three alleged knowingly false statements that Trotter made during his September 30, 2022 interview, leaving little room for any variance at trial. *See* Indictment [14], ¶9.

The false statement count against Trotter is not complex.  When the specificity of the Indictment is coupled with the fact that Trotter's interview was recorded and he has been provided with his communications with Gerace, further particularization is unnecessary to prevent any prejudicial surprise at trial or adversely affect his rights.  To the extent that Trotter harbors any uncertainty about the allegations or evidence that he will face at trial, he has the benefit of the detailed Affidavit of FBI Special Agent Jason Kammeraad submitted in support of the Criminal Complaint [1], which pairs the supporting electronic evidence to the alleged false statements.  Therefore, this motion is denied.

### 3.     Inspection of Grand Jury Minutes

Trotter asks that his request for the disclosure of grand jury minutes be read in conjunction with his motions to dismiss based on outrageous government conduct and for a bill of particulars. See Thompson Affirmation [24], ¶33.  He contends that these motions, when read together, demonstrate the "lack of specificity of the charges and [his] inability to determine what facts the grand jury found when returning the indictment. Id.  He further contends that disclosure of the grand jury minutes is necessary "to limit the proof at trial to only that relevant to the offense voted by the grand jury". Id.

While "grand jury proceedings are subject to strict secrecy requirements", United States v. R. Enterprises, Inc., 498 U.S. 292, 299 (1991), that secrecy is not absolute. Rule 6(e)(3)(E)(ii) permits disclosure of grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury".  Therefore, "the standard for dismissing an indictment is relevant to the standard for disclosure of grand jury materials". United States v. Way, 2015 WL 8780540, *4 (E.D. Cal.

2015).  "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." United States v. Calandra, 414 U.S. 338, 345 (1974).  However, courts may "dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions". United States v. Williams, 504 U.S. 36, 46 (1992).

        Trotter acknowledges that these motions "are not often granted". Thompson Affirmation [24], ¶32.  Since "a presumption of regularity attaches to grand jury proceedings", United States v. Leung, 40 F.3d 577, 581 (2d Cir. 1994), a defendant has the "burden of asserting that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment". United States v. Abcasis, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992). See also United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990), abrogated on other grounds by United States v. Marcus, 628 F.3d 36 (2d Cir. 2010) (disclosure "is rarely permitted without specific factual allegations of government misconduct"); Leung, 40 F.3d at 582 ("[a] review of grand jury minutes should not be permitted without concrete allegations of Government misconduct").

        With these principles in mind, Trotter fails to establish his entitlement to disclosure of the grand jury minutes.  None of his arguments point to any misconduct before, or misuse of, the grand jury, foreclosing his entitlement to production of the grand jury minutes. See Leung, 40 F.3d at 582 ("[a] review of grand jury minutes should not be permitted without concrete allegations of Government misconduct"); United States v. Padua, 2021 WL 2703777,

*5 (W.D.N.Y. 2021) ("defendant is not entitled to inspect grand jury minutes and evidence without producing 'concrete allegations of Government misconduct'").

Trotter argues that during the FBI interview he made certain statements inconsistent with one of the Indictment's alleged misrepresentations. *See* Thompson Affirmation [24], ¶34. He offers this as the lone example of why the court should "examine the grand jury minutes to determine what proof was offered at the grand jury" to support the Indictment's allegation. Id. However, the mere desire to confirm the sufficiency of the evidence supporting a charge falls well short of the particularized showing of need to warrant disclosure of the grand jury minutes. See Calandra, 414 U.S. at 345. *See also* United States v. Copen, 378 F. Supp. 99, 102 (S.D.N.Y. 1974) ("[t]he law is clear . . . that absent a showing a particularized need, the Court need not review grand jury minutes for the purpose of determining whether there was sufficient evidence to file an indictment or whether such indictment is based upon incompetent evidence"). In fact, Trotter acknowledges the "near absence of relief for the accused for indictments returned on insufficient evidence". Thompson Affirmation [24], ¶46. Therefore, this motion is denied.

**4.   Discovery**

"Rights of discovery in criminal cases, unlike in civil cases, are severely circumscribed." BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon, 1995 WL 489426, *4 (S.D.N.Y. 1995). Apart from the government's Brady,[5] Giglio,[6] and Jencks Act (18 U.S.C.

---

[5]   Brady v. Maryland, 373 U.S. 83 (1963).

[6]   Giglio v. United States, 405 U.S. 150 (1972).

§3500) obligations, Rule 16 is "the sole authorized vehicle under the Federal Rules of Criminal Procedure for pre-trial discovery in criminal cases." United States v. Louis, 2005 WL 180885, *2 (S.D.N.Y. 2005).

Where, as here (government's response [25] at 16), the government "makes good faith representations that it is complying with Rule 16, and that it will continue to do so, courts in this Circuit deny . . . discovery requests". United States v. Zelaya-Romero, 2018 WL 1033235, *3 (S.D.N.Y. 2018). Therefore, I will address only the specific items of discovery identified by Trotter.

First, Trotter seeks the "full digital extraction of Mr. Gerace's phone which was seized by the government" because it may include "evidence that other law enforcement officers - not [Trotter] - provided law enforcement sensitive information to Mr. Gerace". Thompson Affirmation [24], ¶¶55-56. However, Trotter acknowledges that "the full extraction of Mr. Gerace's phone[ ] may *not* be relevant to the allegations in the indictment, unless the government intends to argue that [he] . . . provided law enforcement sensitive information to Mr. Gerace". Id., ¶56 (emphasis added). Based on that acknowledgment and the government's representation at oral argument that it "does not intend to argue that the [Trotter] provided law enforcement sensitive information to Gerace",[7] I deny this portion of the motion as moot.

Trotter next seeks copies of all records obtained from the December 19, 2023 grand jury subpoena [24-1] to the Amherst Police Department. *See* Thompson Affirmation [24],

---

[7]   This is my unofficial transcription from the digital audio recording of the August 20, 2024 oral argument.

¶57. According to Trotter, "it appears that excerpts, but not all of the subpoenaed records in the government's possession have been provided to the defense". Id. The government responds that it has "produced as discovery *all* the records that it received from the Amherst Police Department in response to the referenced subpoena". Government's Response [25] at 18 (emphasis added).  Without more, I have no reason to doubt the government at this time. See United States v. Johns, 336 F.Supp.2d 411, 424 (M.D. Pa. 2004) ("[t]he court is entitled to rely on the representations of counsel, as officers of the court").  Therefore, this portion of the motion is denied without prejudice.

Finally, Trotter "requests an order directing the government to provide the name and last known address of each prospective government witness". Thompson Affirmation [24], ¶58. "Although there is no general right to pretrial disclosure of the government's witness list, . . . federal courts have held that Rule 16 does not preclude the exercise of their inherent authority to require pretrial disclosure of witness identities where such disclosure is justified by the circumstances of the particular case." United States v. Barrett, 153 F. Supp. 3d 552, 575–76 (E.D.N.Y. 2015).  Notwithstanding the existence of such discretion to order the pretrial production of a witness list, Trotter offers no reason why it should be exercised at this time. Therefore, the request is denied without prejudice.

     **5.**     **Strike Surplusage**

Trotter moves to dismiss paragraphs two through eight from the Indictment as surplusage on the ground that they "do not allege any improper or criminal conduct", "are irrelevant to the alleged false statements", and "are merely 'inflammatory and prejudicial'". Thompson Affirmation [24] ¶¶4, 8.

Pursuant to Rule 7(d) the court may strike surplusage from the indictment. "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial. If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990). Since such motions are held to an "exacting standard" (id.), they "are rarely granted". United States v. Jimenez, 824 F.Supp. 351, 369, 370 (S.D.N.Y. 1993).

Trotter's motion falls short of meeting this exacting standard. The Indictment alleges that Trotter's false statements and representations were that he "denied having contact with Gerace after January 2017; stated that his involvement in the investigation into the theft of the Rolex watch was limited to taking a statement from Gerace; and stated that Gerace had never reached out to him or contacted him regarding the investigation". Indictment [14], ¶9.

Many of the paragraphs that Trotter seeks to strike contain allegations directly relevant to the alleged falsity of Trotter's statements, including: that "[b]etween . . . February 2017, and in or about April 2019, [Trotter] had contact, both professional and personal, with . . . Gerace" ([14], ¶2); that "[w]ithin hours of filing the police report", Gerace texted Trotter on Trotter's "personal cell phone informing [Trotter] that Gerace had filed the police report and asking [Trotter] if he had seen it" (id., ¶4); that during the course of the investigation into the stolen Rolex watch, Trotter "used his personal cell phone to exchange text messages with Gerace regarding the status of the investigation" (id., ¶5); and that Trotter and Gerace "exchanged text messages regarding Individual 1 and the arrest of Individual 1" (id., ¶6).

Other paragraphs at issue merely provide benign background information.

For instance, paragraph three alleges that Gerace filed his report concerning the stolen Rolex watch with the Amherst Police Department, and paragraph eight alleges when Trotter was interviewed by the FBI.   Inclusion of such allegations is permissible. *See* United States v. Yeaman, 987 F. Supp. 373, 376-77 (E.D. Pa. 1997) ("[l]anguage is properly included in an indictment if it pertains to matters which the government will prove at trial. These matters need not be essential elements of the offense if they . . . contain relevant background information"); United States v. Durham, 2013 WL 1791066, *2 (W.D.N.C. 2013) ("background information . . . is permissible because it is relevant to the charges at issue"); United States v. Hill, 799 F. Supp. 86, 89 (D. Kan. 1992) ("defendant moves to strike in their entirety several introductory paragraphs . . . which provide background information and set forth the alleged conduct of the defendant that constitutes . . . false statements to the FDIC. Clearly the alleged conduct is relevant to the counts with which defendant is charged and should not be stricken from the indictment").

In any event, even accepting Trotter's arguments, "it is the trial court that will determine whether the Indictment is submitted to the jury, when it is submitted, and in what form". United States v. Gerace, 2022 WL 17478270, *9 (W.D.N.Y. 2022), adopted, 2022 WL 17139489 (W.D.N.Y. 2022).  Therefore, the motion is denied, without prejudice to renewal before the trial judge.

      **6.**      **Reservation of Rights to File Additional Motions**

Trotter requests "an order reserving his right to file additional motions" based on further productions of discovery or notifications by the government of its intent to use evidence at trial. Thompson Affirmation [24], ¶80.  This motion is denied as premature.  Trotter's ability

file any additional pretrial motions remains governed by Rule 12(c)(3), which requires a showing of "good cause" for why such motions were not timely asserted.

B.   **The Government's Cross-Motion for Reciprocal Discovery**

The government cross-moves for the production of reciprocal discovery pursuant to Rule 16(b). *See* Government's Response [25] at 21-22. "Rule 16 . . . imposes reciprocal discovery obligations on defendants." United States v. Smith, 985 F.Supp.2d 506, 522 (S.D.N.Y. 2013). Trotter has not opposed this request. Therefore, it is granted.

The government also asks that "upon the District Court's setting a trial date and accompanying Scheduling Order . . . the defendant provide a summary of any testimony that the defendant intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence". Government's Response [25] at 22. Since Trotter has also not opposed this request, it is granted.

## CONCLUSION

For these reasons, the government's cross-motion (Government's Response [25] at 21-22) is granted, Trotter's non-dispositive pretrial motions [24] are denied, and I recommend that Trotter's motion to dismiss the Indictment be denied.

Unless otherwise ordered by Judge Vilardo, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by September 19, 2024. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: September 5, 2024

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge